Good morning, everyone, and welcome to the Ninth Circuit. We'll take the cases in the order on the day sheet. The first case for argument is United States v. Valentin Cardenas Gonzales. Counsel? Good morning, Your Honors. Matt Campbell from the Federal Defenders on behalf of Mr. Gonzales. And I'd like to try to reserve three minutes for rebuttal. Please watch the clock. The government, taking its cue from the district court below, continues to try to argue that Agent Knapp's testimony was properly admitted as a prior consistent statement. There are two flaws with this argument. First, it wasn't properly admitted as a prior consistent statement. And second, this court on direct appeal in a panel on which Judge Smith sat has already found that it wasn't properly admitted. Isn't the question whether there's ineffective assistance of counsel? So we're looking at deficiency, not at the actual right or wrong of the ruling? Your Honor, I think technically that is correct. However, the district court found, I think correctly, that based on law of the case, the court was required to presume that substandard performance had already been met. If, in fact, we look at the decision which you've attributed to me, we're looking at footnote 5, aren't we? It seems to me that in footnote 5, the prior court said, we do not consider whether Gonzales' trial counsel was constitutionally ineffective for failing to object. So in other words, the prior panel was saying, while there is prejudice as it relates to prejudice for, if you will, plain error, we're not suggesting that his performance was bad. We didn't have enough stuff in the record to suggest that it was bad. Agreed, Your Honor, certainly. So therefore, at that point, it seems to me the district court could have and should have looked at whether counsel's performance was deficient or whether it wasn't. But instead, the district court said the law of the case for some reason said it was deficient. Your Honor, I think if we look at the record in this case, what's clear is that trial counsel objected to the admission of this evidence. Trial counsel objected, but objected on the wrong grounds. Now, trial counsel, who was also appellate counsel, then proceeded to appeal the issue again on the wrong grounds. So we don't have a situation where trial counsel was silent so that perhaps there might be some reason why trial counsel wanted this evidence in. That's not the record that we have. What we have is a situation where trial counsel clearly wanted this evidence excluded, but simply made incorrect objections. And because of those incorrect objections, lost the issue at the trial court and lost the issue on appeal. So you don't think that a remand for an evidentiary hearing as to why counsel made that call was even necessary in order to complete the prong one analysis under Strickland? I think, again, based on the findings that it was erroneously admitted and based on the clear record which says counsel tried to keep it out, there can be no tactical reason or strategic reason. So you're saying there's no necessity for a hearing because he still is wrong on not objecting on a different ground? I would submit that we don't need an evidentiary hearing and that the issue is proved. However, what I would also note— Unemployed that. That's the problem I'm having with the remand. It appeared to me that the panel thought that the district court needed to conduct an evidentiary hearing in order to ascertain why counsel failed to object on the proper ground. Well, as Judge Smith rightly points out, ineffective assistance had not been briefed as part of the direct appeal, obviously. Not only that, we were suggesting that it was a prejudice finding, and yet we didn't find clear error. And therefore, we were trying to say, as far as we're concerned, there is prejudice, but no clear error because the final prong of the plain error review was not satisfied. And then we sent it back to allow, if you will, the district court to determine whether there was ineffective assistance of counsel. Well, in reading the panel's plain error analysis, it seems that the panel found error. That was plain, and that was prejudicial. So I suppose the only issue from an ineffective assistance of counsel point of view that wasn't proven on direct appeal would be whether there was some tactical or strategic reason for making this objection. Well, we know that you could have plain error, and it isn't necessarily deficient because the Supreme Court in U.S. v. Henderson said if the law changes while the case is on appeal, it can be plain error even though everyone thought what the law was at trial. So we know that an attorney could potentially not be deficient because the law was what the law was at trial. It's still plain error that was plain because the law changed on appeal. So I don't think we can say that a ruling that there's error that was plain is per se deficient under Strickland. So now we have to consider was the attorney's conduct deficient under Strickland, which the district court didn't really consider. I agree with Your Honor's analysis. I would add that the panel also clearly found that it was prejudicial. We're really talking now on deficient performance, which is what Judge Yakuta's question went to. That's why it didn't seem to me the district court even considered that. It just jumped to the idea that because the panel had found what they'd found, that it was absolutely by law the case deficient. That was wrong, and the government doesn't seem to have appealed that. I agree. The government hasn't appealed that, nor did the government address the law of the case at all in their briefs, thereby waiving it under FRAP 28. But I agree that the district court did not conduct a specific analysis of why counsel didn't make that decision. We had moved for an evidentiary hearing below, an evidentiary hearing the district court denied. Well, the district court read the prior panel disposition as conclusively determining that there had been ineffective assistance under prong one. Correct. And if I'm understanding the colloquy between you and my two colleagues, the problem is that that's not what the panel intended. The panel thought that it might be prejudicial, but it sent it back to the district court to determine whether the conduct was deficient under prong one. And so the error lies with the district court's analysis in reading the panel's disposition and determining what to do on remand. Yes, Your Honor. And the only response I can give to that is, again, I think if counsel had said nothing, if counsel had simply let this evidence come in, there might be some question as to whether there was a tactical or strategic reason for that. But that's not what happened. The U.S. Attorney's Office sought to introduce video statements. Trial counsel objected. And the district court then came back and said, I won't let in the statements, I will let in, I'm paraphrasing, a razor sharp surgical strike of questions to be asked. Well, the government wanted to play the whole video of the forensic interview. Correct. And trial counsel objected. That's clearly hearsay until you find out what specific statements. That's the surgical portion of what was directed, right? I agree with that in that playing a video would have been perhaps a worse error than letting these questions in. But my point is trial counsel objected to them but made the wrong objection. Was the defense theory that there was collusion among the victims that was somehow coloring their testimony? I thought I read somewhere in the briefs a suggestion that these families all knew one another, there were some animosities, and that the young girls were shading their testimony as a result. Your Honor, there were no questions asked of the particular victim at issue here, E.A. There was no cross-examination at all. Right, but the overall defense theory was that this was a put-up, that your client was being framed at the instance of the families of these young girls. Wasn't that part of the defense theory at trial? There were some questions asked about how close families were, whether generally speaking on the reservation, people have a tendency to try to keep things within the reservation or not attack certain people or attack others, that sort of thing. But they were generalized, so from a prior consistent statement point of view, factors would be lacking including the fact that the motive to fabricate has to arise recently and after the initial statement, and that was never proven here. But why wouldn't it be proper for the district court to allow in as rebuttal evidence of the prior statement by the victim to the forensic examiner that the touching occurred under the clothes? Because as we've cited in numerous cases, the impeachment at best was general. It was not of EA, the witness at issue, and any motive to fabricate occurred prior to the videotaped interview, so it wouldn't make it. I'm going to reserve five seconds. All right. Please, the court and counsel, James Geike on behalf of the United States. The issue here, frankly, is the fact that the defendant confessed, and that was properly admitted. But it wasn't corroborated, Mr. Geike. That's the issue we're wrestling with. Our case law says an admission by the defendant that I did it is not good enough unless there's something to establish its reliability. Well, it's the scale of what is corroborated. Because what was corroborated and what was not. The scale was corroborated because is there any corroboration without the NAP testimony that the defendant touched the EA underneath her clothing? There is not. There is no corroboration. But there is corroboration of the essential issue that she was touched. Well, there is corroboration of it was touched, but isn't that a lesser charge? It is a lesser charge. So, therefore, at that point, we don't have corroboration without the NAP testimony of the two tougher sentences. There is an argument that we don't. However, there is nothing. I mean, to be fair with me, what evidence is there? What corroborating evidence is there that she was touched underneath her clothing, which are the tougher charges except NAP? There is not except NAP. But that's why we go back to why is the NAP testimony properly admitted? The problem is that if I take the law of the case as it is here, it seems to me that the NAP testimony does not get admitted. Well, the government did not use those specific words to dispute the law of the case doctrine. The government did present a strong argument as to why that information was properly admitted, given the essential attack against that witness through the cross-examination of Agent Benedetti and the cross-examination of the other victim witnesses. What does that have to do with allowing hearsay evidence in in this particular situation? It also has to do with the nature, if you read through the testimony of EA. I read the testimony of EA. EA didn't say anything to suggest that now NAP should come in and say, I am absolutely telling you she doesn't tell the truth because she was touched underneath her clothes. Well, as the panel found for the prior remand, there could be a number of reasons why EA's testimony essentially trails off. I understand that, but nonetheless, the panel, having sat there, never said one whit that we're going to allow that testimony in. The only reason that there was a problem at all was we couldn't tell whether there was any deficient performance. And on this record, I don't think that you can determine if there's deficient performance. Well, but the problem is then we thought it was going to go back for you to suggest there was deficient performance, and all that happened was the district court applied the law of the case to suggest there's deficient performance. That was never found in the law of the case, and you don't appeal the issue. So how do I get to help you? Well, I think, Your Honor, it has to go back to the nuance of EA's testimony. EA's testimony at the conclusion of her testimony said, and the question was, the prosecutor is pushing EA about where she was touched. EA said, my, I don't. Do you not know or do you not want to talk about it? I don't want to talk about it. So it was quite clear from the testimony of EA that, and if you read her testimony in complete, that she was misguided on a number of things. But when follow-up questions were made, she would elaborate. When follow-up questions were made as to the nature of the touching, under the clothes or not under the clothes, she shut down. She's a 10-year-old victim at this point, and she shut down. What happened to the demonstrative exhibit? Was that in the record before the prior panel? As I understand it, she was illustrating her testimony with a diagram of a female foreman pointing to where she was touched. I believe it was, but I can't say with certainty. But it wasn't included in the record. I don't believe it was. I mean, as you know from when we do CLE presentations on appellate practice, this is one of my pet peeves on deficient performance by appellate counsel. And so we don't know then whether the jury had enough evidence to conclude. But I think we can tell from the reading of the testimony of EA where she was pointing on that exhibit. Yeah, but just because she pointed to the general area doesn't get to the specifics of over or under the clothing, does it? Not only that, but in what room? Well, we do have certainly sufficient testimony as to the truck. But I'm just trying to suggest. I mean, we're looking at skin-to-skin contact evidence. We have Benedetti who admits to one contact. We have EA who says touch three times, never skin-to-skin. If you leave to that out, if you leave NAPPS testimony out, at that point it doesn't seem to me, barring corroboration that you've got to have it, that you can ever get to the point that you're going to say there's enough evidence for the jury to convict. Well, we do have Agent Benedetti's testimony on two occasions of the count one and count two, touching in the living room and touching in the car or in the truck. And we have a 10-year-old victim witness who shut down when she was starting to be pressed about the nature and where the touching occurred, getting to those specific questions. And then we have a line of questioning of Agent Benedetti to start out with prior to EA's testimony, as well as the cross-examination of the other witnesses that does allude to fabrication. It does allude to the collusion of those witnesses. So then admitting examiner, forensic examiner NAPPS testimony to rebut that and show that EA had made a prior consistent statement on the unique facts of this case and the unique order in which the testimony came out. Prior consistent or prior inconsistent? I mean, the problem is the state of the record is she didn't testify expressly that it was skin-on-skin. And then you tried to rehabilitate her by offering the forensic interview that she did say skin-to-skin touching. That's not a prior consistent statement under the rules of evidence, is it? Well, I would say that her initial statement was empty. You want to believe the truth of the initial statement, and you tried to get that in because, sadly, your 10-year-old victim just couldn't say it in front of the jury. So where's the prior consistent statement? Well, and the fact that she couldn't say it in front of the jury I think suggests the ambiguity of the situation. Well, the district court thought it was ambiguous. The district court said, well, if the Ninth Circuit panel had been there and saw what I saw, they would have thought this was consistent, which goes to my question about whether a reasonable attorney at the time would have thought it was a consistent statement and whether we can consider that issue. I think you can. And as I was not trial counsel, I look into the district court's determination, who was in the best position of anyone in this room to determine whether that statement was and should have been admitted as a prior consistent statement. He had an opportunity to evaluate the demeanor of the victim, had an opportunity to evaluate the whole proceedings and whether she was essentially undermined through the cross-examination of other witnesses. Well, it's not a traditional way to introduce a prior consistent statement. It's not a traditional type of case in the sense you have a vulnerable victim witness. I mean, recall, she was up there with essentially a counselor with her when she was testifying. And in the government's reading of her testimony, when she essentially shuts down, she shuts down because she doesn't want to talk about this anymore. And she doesn't want to talk about it anymore when the prosecutor is trying to push her about whether it was skin to skin, where it happened. The district court seemed to think that it reasonably could be considered a prior consistent statement, rightly or wrongly. But then the district court thought the law of the case requires me to say that there was deficient performance. There was not much of anything about that in your brief. Is that something that we can consider? Whether the district court erred in saying that it was per se deficient based on the law of the case? I think you can. I think you can. Well, the government didn't. Why? When you didn't even put it in your brief? We essentially argued, though, that the district court was correct in its analysis of why it was not prejudicial. We did argue that in our brief. If we go to sentencing and the counts against EA are vacated, then the whole sentence ought to be redone? No, because we have two independent victims. The jury independently considered that testimony, independently considered that evidence, and they were properly charged. The only counts that we're going to get the heavy sentence are the counts against EA. That's correct. And it was a sentencing, as I understand, a sentencing package. So, therefore, why isn't it that we ought to send the whole sentence back to be redone? Because you have independent evidence that came into the— The independent evidence that came in as to these other victims would not have gotten to skin-to-skin contact. And it didn't. It didn't need to because those— I understand. That's why I don't understand why when the only top sentences, the big sentences, are the skin-to-skin sentences as to EA. Well, and this—the record is that each individual kind of conviction received 30 years concurrent. So the sentences were the same for the other two victims who were convicted of the lesser charge. Those convictions were the lesser charge, but the sentences were the same. So it was 30 years— Were they bundled for sentencing purposes? They were sentenced together, but they were concurrent sentences. I understand that. But the question is what relief should we afford if we agree with Mr. Campbell that there was error here? Do we send it back for an entire resentencing? Do we direct the district court to resentence on the lesser included counts and then reconsider in light of its sentence on the other two counts? I would think it needs to be sent back only for consideration of counts 1 and counts 2, the counts related to EA. If it's a packaged sentence, I don't know how that happens. That was, I thought, Judge Tolman's question. I guess with instructions that the district court need only consider whether it would, in light of the court's different ruling with regards to counts 1 and 2, whether it would consider—sentence those collectively concurrently. I think that's what our bundling case law says. I think that's correct. But I think the panel need not disturb—there's no reason to disturb—counts 3 and 4. There was independent evidence of that. It's not challenged on appeal. And it's clear the jury did make an independent finding because they found not guilty in count 5. You're over your time. Thank you. We appreciate your argument. We'll give you a minute for rebuttal. Thank you very much. Regarding unbundling, I would cite the court to the Handa and McClain decisions that I had mentioned previously in my briefing. I do want to point out this was a very close case, and I would cite the court to ER 807, ruling on the Rule 29, where the district court said you barely eke by on counts 1 and 2 to allow that to go to the jury. And that was after this evidence was erroneously admitted. So this was not a strong case. So what's the relief? Do we vacate and send it back for resentencing on 1 and 2 or for a full de novo resentencing as to all four counts of conviction? I think the court would have to vacate the conviction on counts 1 and 2 and vacate the sentences on all counts for a complete resentencing. And in regard to deficient performance, I would point out that the district court, while it assumed prejudice, I think part of that the district court was in the best position to view and understood that based on the objections there was simply no tactical reason why counsel would have objected but had the wrong objection. Thank you very much. Thank you. All right. The case of the United States v. Gonzales is submitted.
judges: Tallman, Ikuta, N.R. Smith